UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

MICHAEL TRENT REZNOR, an individual,

Plaintiff,

-against-

J. ARTIST MANAGEMENT, INC., an Ohio Corporation,
JOHN A. MALM, JR., an individual,
RICHARD SZEKELYI, an individual, and
NAVIGENT GROUP,

Defendants.

---------------------------------------------------------------x

**ANSWER AND COUNTERCLAIM**

Case No. 04CIV3808(JSR)

**JURY TRIAL DEMANDED**

Defendants, John A. Malm, Jr. ("Malm") and J. Artist Management, Inc. ("JAM"), for their Answer to the Complaint of Michael Tr. Reznor, states as follows:

## FIRST DEFENSE

1. Defendants admit that Plaintiff performed under the name "Nine Inch Nails" since about 1989, that he is a musician, songwriter, and vocalist and that Nine Inch Nails has sold millions of albums over the years. Defendants deny the remaining allegations contained in Paragraph 1 of the Complaint.

2. Defendants admit that in the 1980s, Plaintiff hired JAM as Reznor's manager. Further answering, Defendants deny the remaining allegations contained in Paragraph 2 of the Complaint.

3. Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4. Defendants deny the allegations contained in Paragraph 4 of the Complaint.

5. Defendants deny the allegations contained in Paragraph 5 of the Complaint.

6. Defendants deny for want of knowledge the allegations contained in Paragraph 6 of the Complaint.

7. Defendants admit that JAM is an Ohio corporation doing business in Ohio. Defendants deny the remaining allegations contained in Paragraph 7 of the Complaint.

8. Defendants admit that Malm currently lives in Ohio, does business primarily in Ohio, and is the sole owner of J. Artist Management, Inc. Defendants deny the remaining allegations contained in Paragraph 8 of the Complaint.

9. Defendants admit that Richard Szekelyi is an Ohio resident doing business in Ohio. Defendants deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. Defendants admit that Navigent Group is an Ohio company doing business in Ohio and that Szekelyi is a principal of Navigent Group. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11. Defendants deny the allegations contained in Paragraph 11 of the Complaint.

12. Defendants deny the allegations contained in Paragraph 12 of the Complaint.

13. Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14. Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15. Defendants admit that when Malm met Reznor, Malm was promoting local acts and Reznor was trying to break into the music field. Defendants deny the remaining allegations in Paragraph 15 of the Complaint.

16. Defendants admit that JAM and Malm always had, and continue to have, Reznor's best interest at heart and never took advantage of him in any fashion. Defendants deny the remaining allegations in Paragraph 16 of the Complaint.

17. Defendants admit that in 1989, attorney Michael Toorock provided legal services with respect to recording and publishing contracts with TVT. Defendants deny the remaining allegations in Paragraph 17 of the Complaint.

18. Defendants admit that in 1989, Malm and Reznor entered into a Management Agreement prepared for them by attorney Michael Toorock. Defendants deny the remaining allegations in Paragraph 18 of the Complaint.

19. Defendants admit that JAM and Plaintiff entered into a Management Agreement in 1989, the terms of which speak for itself. Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint.

20. Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21. Defendants admit the allegations contained in Paragraph 21, of the Complaint.

22. Defendants admit that certain of Reznor's albums used the NIN name and logo but deny the remaining allegations contained in paragraph 22 of the Complaint.

23. Defendants admit that after the release of "Pretty Hate Machine," Nine Inch Nails went on tour. Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24. Defendants admit that JAM managed Nothing Records, Inc. as a result of an agreement between JAM and Reznor. Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25. Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26. Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27. Defendants admit that up until 1994, there were no trademarks for the name or logo for "NIN" but deny the remaining allegations contained in Paragraph 27 of the Complaint.

28. Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29. Defendants deny the allegations contained in Paragraph 29 of the Complaint.

30. Defendants deny the allegations contained in Paragraph 30 of the Complaint.

31. Defendants deny the allegations contained in Paragraph 31 of the Complaint.

32. Defendants deny the allegations contained in Paragraph 32 of the Complaint.

33. Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34. Defendants deny the allegations contained in Paragraph 34 of the Complaint.

35. Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36. Defendants deny the allegations contained in Paragraph 36 of the Complaint.

37. Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38. Defendants deny the allegations contained in Paragraph 38 of the Complaint.

39. Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40. Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41. Defendants deny the allegations contained in Paragraph 41 of the Complaint.

42. Defendants deny the allegations contained in Paragraph 42 of the Complaint.

43. Defendants deny the allegations contained in Paragraph 43 of the Complaint.

44. Defendants deny the allegations contained in Paragraph 44 of the Complaint.

45. Defendants incorporate their responses and denials to Paragraphs 1 through 44 of their Answer to the Complaint as if fully rewritten herein.

46. Defendants deny the allegations contained in Paragraph 46 of the Complaint.

47. Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48. Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49. Defendants deny the allegations contained in Paragraph 49 of the Complaint.

50. Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51. Defendants incorporate their responses and denials to Paragraphs 1 through 50 of their Answer to the Complaint as if fully rewritten herein.

52. Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53. Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54. Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55. Defendants deny the allegations contained in Paragraph 55 of the Complaint.

56. Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57. Defendants deny the allegations contained in Paragraph 57 of the Complaint.

58. Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59. Defendants deny the allegations contained in Paragraph 59 of the Complaint.

60. Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61. Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62. Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63. Defendants deny the allegations contained in Paragraph 63 of the Complaint.

64. Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65. Defendants deny the allegations contained in Paragraph 65 of the Complaint.

66. Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67. Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68. Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69. Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70. Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71. Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72. Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73. Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74. Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75. Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76. Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77. Defendants incorporate their responses and denials to Paragraphs 1 through 76 of their Answer to the Complaint as if fully rewritten herein.

78. Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79. Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80. Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81. Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82. Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83. Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84. Defendants incorporate their responses and denials to Paragraphs 1 through 83 of their Answer to the Complaint as if fully rewritten herein.

85. Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86. Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87. Defendants deny the allegations contained in Paragraph 87 of the Complaint.

87. Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89. Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90. Defendants incorporate their response and denials to Paragraphs 1 through 89 of their Answer to the Complaint as if fully rewritten herein.

91. Defendants deny the allegations contained in Paragraph 91 of the Complaint.

92. Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93. Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94. Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95. Defendants admit that this paragraph quotes from portions of the Management Agreement and further states that the Management Agreement speaks for itself and this allegation requires no response.

96. Defendants incorporate their responses and denials to Paragraphs 1 through 95 of their Answer to the Complaint as if fully rewritten herein.

97. Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98. Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99. Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100. Defendants incorporate their response and denials to Paragraphs 1 through 99 of their Answer to the Complaint as if fully rewritten herein.

101. Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102. Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103. Defendants incorporate their responses and denials to Paragraphs 1 through 102 of their Answer to the Complaint as if fully rewritten herein.

104. Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105. Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106. Defendants incorporate their response and denials to Paragraphs 1 through 105 of their Answer to the Complaint as if fully rewritten herein.

107. Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108. Defendants deny the allegations contained in Paragraph 108 of the Complaint.

109. Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110. Defendants deny the allegations contained in Paragraph 110 of the Complaint.

111. Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112. Defendants incorporate their response and denials to Paragraphs 1 through 111 of their Answer to the Complaint as if fully rewritten herein.

113. Defendants deny the allegations contained in Paragraph 113 of the Complaint.

114. Defendants deny the allegations contained in Paragraph 114 of the Complaint.

115. Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116. Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117. Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118. Defendants deny the allegations contained in Paragraph 118 of the Complaint.

119. Defendants incorporate their response and denials to Paragraphs 1 through 118 of their Answer to the Complaint as if fully rewritten herein.

120. Defendants deny the allegations contained in Paragraph 120 of the Complaint.

121. Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122. Defendants deny the allegations contained in Paragraph 122 of the Complaint.

123. Defendants deny the allegations contained in Paragraph 123 of the Complaint.

124. Defendants incorporate their responses and denials to Paragraphs 1 through 123 of their Answer to the Complaint as if fully rewritten herein.

125. Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126. Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127. Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128. Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129. Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130. Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131. Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132. Defendants deny the allegations contained in Paragraph 132 of the Complaint.

133. Defendants incorporate their responses and denials to Paragraphs 1 through 132 of their Answer to the Complaint as if fully rewritten herein.

134. Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135. Defendants deny the allegations contained in Paragraph 135 of the Complaint.

136. Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137. Defendants deny the allegations contained in Paragraph 137 of the Complaint.

138. Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139. Defendants deny the allegations contained in Paragraph 139 of the Complaint.

140. Defendants deny the allegations contained in Paragraph 140 of the Complaint.

141. Defendants deny the allegations contained in Paragraph 141 of the Complaint.

142. Defendants deny the allegations contained in Paragraph 142 of the Complaint.

143. Defendants deny the allegations contained in Paragraph 143 of the Complaint.

144. Defendants deny each and every allegation not specifically admitted herein.

## SECOND DEFENSE

145. Plaintiff's Complaint fails, in whole or in part, to state a claim against Defendants upon which relief may be granted.

## THIRD DEFENSE

146. Plaintiff's claims are barred, in whole or in part, by the doctrine(s) of waiver, acquiescence, estoppel, ratification and/or laches.

**FOURTH DEFENSE**

147. Pursuant to 28 U.S.C. §§ 1404, 1406 and/or 1407, venue of this matter should be transferred to the Northern District of Ohio.

**FIFTH DEFENSE**

148. Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join all necessary and indispensable parties to this lawsuit.

**SIXTH DEFENSE**

149. Plaintiff's claims are barred, in whole or in part, by the doctrine(s) of comparative negligence and/or contributory negligence, and/or by his own lack of due diligence.

**SEVENTH DEFENSE**

150. Plaintiff has failed to plead fraud with particularity.

**EIGHTH DEFENSE**

151. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

**NINTH DEFENSE**

152. To the extent Plaintiff has any damages, which Defendants deny, Plaintiff's damages were not proximately caused by the conduct of Defendants under any of Plaintiff's purported causes of action.

**TENTH DEFENSE**

153. Plaintiff has failed to mitigate his damages.

**ELEVENTH DEFENSE**

154. Plaintiff's claims are barred by the doctrines of promissory estoppel, unjust enrichment and/or equitable estoppel.

**TWELFTH DEFENSE**

155. Defendants reserve the right to assert such additional defenses as may come to light as the result of discovery proceedings in this action.

WHEREFORE, having fully answered, Defendants pray that Plaintiff's Complaint be dismissed at Plaintiff's costs and for such further relief as this Court deems just and proper.

## COUNTERCLAIM

## JURISDICTION AND VENUE

1. Defendants incorporate by reference all of the allegations contained in its Answer to Plaintiff's Complaint as if fully set forth herein.

2. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because the matters in controversy exceed the sum of $75,000.00 and are between citizens of different States. Furthermore, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Defendants' counterclaims, which are so related to the claims in Plaintiff's Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

3. If and to the extent that venue in this judicial district is, pursuant to 28 U.S.C. § 1391(a), deemed proper with regard to the claims set forth in Plaintiff's Complaint, venue is likewise proper in this judicial district with regard to Plaintiff's Counterclaim. (As set forth above, Defendants believe that venue of this matter should be transferred to the Northern District of Ohio, and has filed a motion to transfer venue to the Northern District of Ohio.)

## PARTIES

1. JAM is an Ohio corporation with its principal place of business located at 20325 Center Ridge, Penthouse, Rocky River, Ohio 44116.

2. Malm is an individual residing in Lakewood, Ohio. Malm is the sole owner of JAM, which Malm formed in 1985. At all relevant times, Malm has acted in his capacity as owner of JAM and as a manager for Reznor.

3. Reznor is an individual with a residence in New Orleans, Louisiana and temporarily residing in California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of the state of Ohio and a citizen of another state.

5. Venue is proper in this Court under 28 U.C.S. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

6. This is an action arising out of Reznor's utter disregard for his contractual and fiduciary obligations to Malm and JAM. For approximately twenty years, and at great financial and personal sacrifice, Malm acted as Reznor's exclusive manager in the music business. Due in substantial part to Malm's loyalty and efforts, Reznor has grown during this period from an unknown musician into a critically acclaimed and extraordinarily successful recording artist and musical band. As Reznor became successful, Reznor and Malm agreed to form a jointly owned record label, a merchandising company and other related companies, all of which were intended to, among other things, accommodate Reznor's desire for artistic integrity and control. At Reznor's request, Malm went beyond his obligations as Reznor's manager and became Reznor's business partner, running their jointly-owned business.

7. Malm's loyalty and dedication to Reznor and his band were extraordinary. During the early years of their relationship, Malm often paid for Reznor's food and rent. As Reznor and his band began to achieve commercial success, Malm often deferred taking management commissions to which Malm was contractually entitled in order to maximize Reznor's current revenues. When Reznor's personal problems rendered Reznor essentially

nonfunctional for extended periods, and hence unable to generate income, Malm did not abandon Reznor -- to the contrary, Malm remained intensely loyal to Reznor and provided Reznor unlimited personal and emotional support.

8. Despite Malm's diligent efforts, the commercial success of Reznor and his band began to falter, due in large part to Reznor's personal problems. Reznor failed to capitalize on his earlier success by not recording and releasing additional albums in a timely manner and ceasing to tour and make personal appearances.

9. Due to Reznor's inactivity, his income became substantially reduced. Nevertheless, Reznor continued his wildly spendthrift ways, which depleted his financial resources at a time Reznor could ill afford it. Rather than taking responsibility for the consequences of his own failures, Reznor instead, falsely blamed Malm for Reznor's current circumstances and terminated Malm as his manager.

10. Despite Malm's more than twenty (years of single-minded dedication to Reznor and his band, Reznor did not stop with simply removing Malm as his manager. In the ultimate betrayal of his loyal manager, business partner and personal protector, Reznor stabbed Malm in the back with a nine-inch nail by (a) suspending payment of management commissions to which Malm is entitled, (b) repudiating Reznor's obligation to pay Malm more than Two Million Dollars ($2,000,000.00) in commissions that Malm had previously deferred, (c) challenging Malm's rights as a co-owner of their jointly-owned enterprises, and (d) mounting a campaign to malign Malm and impugn his integrity in the music industry with wildly false claims that Malm had mishandled Reznor's money and mishandled Reznor's career.

**FACTS**

11. Malm and Reznor first met in the Cleveland, Ohio area in the early 1980s where both parties resided. At the time, Reznor was an aspiring recording artist and songwriter. As their relationship developed, Reznor asked Malm if he would act as Reznor's manager in connection with Reznor's career in the music industry. Malm agreed to do so. For the next several years, Malm worked as Reznor's manager without a written contract or compensation. Moreover, from time to time Malm paid for Reznor's living expenses and also paid for some of the costs associated with the pre-production of the demonstration tapes for an album entitled *Pretty Hate Machine*, as well as Reznor's performances, for which Malm was not reimbursed.

12. Based upon the *Pretty Hate Machine* demonstration tape and Reznor's performance that were financed in part by Malm, and based in part upon Malm's substantial personal involvements, Reznor and his band, Nine Inch Nails ("NIN"), secured a recording contract in early 1989 with a record company known as TVT Records and a music publishing agreement with an affiliated company, TVT Music.

13. In or around April 1989, Reznor and Malm, through JAM, entered into a written management agreement (hereinafter the "Management Agreement"). Under the terms of the Management Agreement, Malm, through JAM, was to continue to act as Reznor's manager in exchange for 20% of Reznor's gross compensation and reimbursement of all expenses advanced or incurred on behalf of Reznor.

14. In or around October 1989, Reznor's band, NIN, released an album entitled *Pretty Hate Machine*. To support the album sales, NIN toured in 1990 and 1991. Despite the Management Agreement entitling JAM to take commissions immediately on Reznor's gross compensation from the tours and album sales, JAM deferred its compensation so Reznor could

begin to achieve financial independence and stability. Reznor agreed that JAM could defer its compensation as the deferral was in Reznor's interests.

15. In or around 1992, Reznor signed a recording agreement with Interscope Records ("Interscope"). The Interscope agreement was negotiated by Malm, through JAM, and obligated Reznor to record seven albums. Under the Management Agreement between JAM and Reznor, JAM was to receive, among other things, 20% of the gross revenues arising from these seven albums.

16. Additionally, as part of the Interscope agreement, Reznor and Malm received funding and support for their own record label, Nothing Records, Inc. ("Nothing Records"). Nothing Records was incorporated in 1993 as an Ohio corporation. At all relevant times, Nothing Records has had its principal place of business in or around the Cleveland, Ohio area. Reznor requested that Malm take on responsibilities beyond the Management Agreement and run Nothing Records. Malm agreed, and Reznor and Malm agreed that they would each receive a fifty percent (50%) interest.

17. Additionally, in 1993 Malm and Reznor decided to form a company whose purpose was to market merchandise associated with NIN and other artists. Accordingly, in or about October 1993, J. Artist Management Merchandise, Inc. d/b/a Object ("Object") was incorporated as an Ohio corporation. Again, Reznor requested that Malm take on responsibilities beyond the Management Agreement and run Object. Malm agreed and Reznor and Malm agreed they would each receive a 50% interest. At all relevant times, Object has had its principal place of business in or around the Cleveland, Ohio area.

18. In 1994, Reznor's band, NIN, released an album entitled *The Downward Spiral*. In connection with the *Downward Spiral* album, Interscope Records paid an advance to Reznor

of which JAM did not receive its contractual share. To support the album sales, NIN toured in 1994 and 1995, in a tour named the "Self Destruct Tour." At the end of 1995, Reznor also toured with the recording artist, David Bowie. Despite the Management Agreement entitling JAM to take commissions immediately on Reznor's gross compensation from the tours and album sales, JAM again deferred its compensation relating to the Self Destruct Tour and *The Downward Spiral* recording advance. Again, Reznor agreed JAM could defer compensation and reimbursements because such deferral was in Reznor's interests.

19. By the end of 1995, deferred compensation owed to JAM from Reznor totaled approximately $2.1 million. To reduce the debt owed and so as to not negatively impact Reznor's cash position, Reznor and Malm reached an agreement that Malm would receive a 50% ownership interest in certain real estate located in Louisiana in exchange for a $200,000 reduction in the outstanding balance owed by Reznor to Malm and JAM. The agreement was memorialized in Ohio by the formation of a company in 1995 called Hot Snakes LLC ("Hot Snakes"). Hot Snakes purchased the Louisiana real estate valued at approximately $400,000, which included substantial improvements made to the property. Malm and Reznor each have a 50% ownership interest in Hot Snakes. Hot Snakes is an Ohio limited liability company.

20. Also in 1995, Malm and Reznor jointly agreed to form Nothing Interactive, Inc. ("Nothing Interactive"), a company created to handle website activities. Again, Reznor asked Malm to take on responsibilities beyond the Management Agreement and Malm agreed to do so. Reznor agreed that Reznor and Malm each would have a 50% ownership interest in Nothing Interactive. Nothing Interactive is an Ohio corporation with its principal place of business at all relevant times located in the Cleveland, Ohio area.

21. In 1997, Malm and Reznor jointly agreed to form Nothing Records Limited, Inc. ("Nothing Records Limited"), a company created to handle various recording artists. Reznor agreed that Reznor and Malm would each have a 50% ownership interest in Nothing Records Limited. Nothing Records Limited is an Ohio corporation with its principal place of business at all relevant times located in the Cleveland, Ohio area.

22. In 1998, Malm and Reznor formed a company called Halo Holding, LLC ("Halo Holding"). Halo Holding holds various trademarks relating to NIN that are jointly registered to JAM and Reznor. Malm and Reznor each have a 50% ownership interest in Halo Holding. Halo Holding is an Ohio limited liability company with its principal place of business at all relevant times located in the Cleveland, Ohio area. Joint control of Halo Holding is critical to the success of Object, as Object's right to exploit the trademarks relating to NIN is the foundation of Object's business.

23. In or around 2000, Malm, on behalf of Nothing Records, negotiated an extremely lucrative and favorable agreement with Interscope Records. Prior to consummating the agreement, however, it was necessary for Reznor to provide his assent and participation. Reznor failed to give his assent, without justification. Because of his unjustified failure to give consent, Malm was unable to consummate the transaction, to the substantial detriment of Malm and Nothing Records.

24. In or around December 2003, Reznor gave Malm and JAM notice of his intent to terminate the Management Agreement. Accordingly, Malm and JAM requested payment from Reznor for the aforementioned commissions due and owing to JAM under the Management Agreement that had been deferred with Reznor's consent and knowledge. Despite due demand, Reznor has failed to pay these monies to Malm or JAM.

25. Further, after termination of the Management Agreement, Reznor has given Malm notice of his intent to disregard JAM's interests in receiving gross revenues, which arise from albums Reznor is obligated to record under the Interscope agreement that JAM negotiated. There are currently due and owing to JAM management commissions in an amount of which Malm and JAM are uncertain.

26. Finally, after termination of the Management Agreement, Reznor has given Malm notice of his intent to disregard Malm's interests in the aforementioned various companies for which they each own one-half interests. Specifically, Reznor is currently negotiating various contracts and agreements and performing other actions that could adversely impact Malm, as a 50% shareholder of these various companies without the authority, input or consent of Malm. Moreover, Reznor has indicated that he intends to exercise sole ownership and control of the trademarks relating to NIN (despite the parties' agreement), the consequences of which may be the destruction of Object. Reznor has further given JAM and Malm notice of his intent to deprive JAM and Malm of any profits which have inured and will inure in the future to and for the benefit of JAM and the aforementioned various companies in which Malm has an interest.

**<u>Count One – Declaratory Judgment</u>**

27. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 26 inclusive above.

28. A real and present controversy exists between Malm and Reznor as to the parties' respective interests in Nothing Records, Hot Snakes, Object, Nothing Interactive, Nothing Records Limited and Halo Holding.

29. Malm desires that this Court determine the parties' rights and responsibilities and declare that Malm is the rightful 50% owner of Nothing Records, Hot Snakes, Object, Nothing Interactive, Nothing Records Limited and Halo Holding.

30. Malm further desires that this Court determine the parties' rights and responsibilities and declare that Plaintiff is entitled to half of the profits derived or to be derived from Nothing Records, Hot Snakes, Object, Nothing Interactive, Nothing Records Limited and Halo Holding.

**Count Two – Declaratory Judgment**

31. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 30 inclusive above.

32. A real and present controversy exists between JAM and Reznor under the Agreement with respect to the parties' respective interests in gross revenues arising from the seven albums Reznor is obligated to record under the Interscope agreement.

33. JAM desires that this Court determine the parties' rights and responsibilities and declare that JAM is entitled to 20% of the gross revenues arising from the seven albums Reznor is obligated to record under the Interscope agreement.

**Count Three – Breach of Fiduciary Duty**

34. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 33 inclusive as set forth above.

35. Reznor owes a fiduciary duty to Malm as shareholder of Nothing Records, Hot Snakes, Object, Nothing Interactive, Nothing Records Limited and Halo Holding.

36. Reznor has breached his fiduciary duties to Malm by his unlawful actions in, among other things, seeking to deprive Malm of his rightful ownership interests and/or profits in

Nothing Records, Hot Snakes, Object, Nothing Interactive, Nothing Records Limited and Halo Holding, LLC.

37. Reznor has further breached his fiduciary duties to Malm by his unlawful acts or omissions in, among other things, depriving Malm of meaningful corporate opportunities.

38. As a result of Reznor's wrongful conduct, Malm has been harmed in an amount to be proven at trial, including attorneys' fees.

**Count Four – Breach of Contract**

39. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 38 inclusive as set forth above.

40. JAM is owed deferred commissions from Reznor in an amount not less than $2.1 million. JAM is owed additional commissions in an amount to be determined at trial, which were not deferred by Malm and which Reznor has failed and refused to pay. Despite due demand, Reznor has failed and refused to pay the amounts due and owing to JAM.

41. Reznor's failure and refusal to pay the monies owed for the deferred commissions constitute a breach of the parties' Agreement.

42. As a direct and proximate result of Reznor's breach of the Management Agreement, JAM has been damaged in an amount to be proven at trial but not less than $2.1 million, plus prejudgment and post-judgment statutory interest of 10%.

**Count Five - Conversion**

43. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 42 inclusive as set forth above.

44. By his conduct, Reznor's wrongful retention of the deferred commissions constitutes a conversion and misappropriation of the property rights of JAM.

45. Reznor's conversion of JAM's property has occurred willfully and with actual malice, as a result of which Plaintiff is, in addition to appropriate compensatory damages in an amount to be determined at trial, entitled to recover from Reznor appropriate punitive damages and attorneys' fees.

**Count Six – Defamation**

46. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 45 inclusive as set forth above.

47. Since termination of the Management Agreement, Reznor, without privilege to do so, has made false statements concerning Malm's character.

48. The false statements uttered by Reznor are defamatory and have been published through Reznor's communications with others in the music industry.

49. As a result of Reznor's false statements, Malm has been damaged in an amount to be proven at trial.

50. Reznor has acted with the required degree of fault and malice such that punitive damages should be awarded.

**Count Seven – Promissory Estoppel**

51. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 50 inclusive as set forth above.

52. Reznor repeatedly promised JAM and Malm that they would share one-half of any profits generated from the companies set forth above for which Malm owned a 50% interest and that Reznor would continue to abide by the terms of his Management Agreement with JAM. Based on these promises, JAM and Malm agreed to continue to work without additional

compensation, to defer commissions earned, and perform other actions for the benefit of Reznor. JAM and Malm relied to their detriment upon Reznor's repeated promises.

53. Reznor has breached his promise of sharing one-half of the profits generated from these companies. Reznor has further breached his promise by failing to live up to the terms of his Management Agreement with JAM.

54. As a proximate result of Reznor's actions as set forth above, JAM and Malm have suffered damages in an amount to be proven at trial.

**Count Eight – Unjust Enrichment**

55. Plaintiffs adopt and incorporate by reference the averments of paragraphs 1 through 54 inclusive as set forth above.

56. By virtue of JAM's and Malm's actions, they conferred a benefit on Reznor.

57. At all times, Reznor knew of the benefit being conferred by JAM and Malm.

58. Reznor has retained the benefit under circumstances where it would be unjust for him to retain the benefit without payment to JAM and Malm.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendant as follows:

A. On Count One, the Court declare that Malm has a rightful 50% interest in the aforementioned companies and that Malm is entitled to one-half of any profits derived from or to be derived from the aforementioned companies;

B. One Count Two, the Court declare that JAM is entitled to 20% of the gross revenues arising from the seven albums Reznor is obligated to record under the Interscope agreement;

C. On Count Three, judgment in favor of Malm for money damages in an amount to be proven at trial;

D. On Count Four, judgment in favor of JAM for money damages in an amount to be proven at trial, but not less than $2.1 million;

E. On Count Five, judgment in favor of JAM for compensatory damages in an amount to be determined at trial, together with appropriate punitive damages and attorneys' fees;

F. On Count Six, judgment in favor of Malm for compensatory damages in an amount to be determined at trial, together with appropriate punitive damages and attorneys' fees;

G. On Counts Seven and Eight, judgment in favor of JAM and Malm for compensatory damages to be determined at trial;

H. Prejudgment and post-judgment interest and costs; and

I. For any further relief as the Court deems just and equitable.

Dated: New York, New York
August 19, 2004

ESANU KATSKY KORINS & SIGER, LLP

By: <u>/s/ *Thomas M. Lopez*</u>
Thomas M. Lopez (2699)
605 Third Avenue
New York, NY 10158
(212) 953-6000

MEYERS, ROMAN, FRIEDBERG & LEWIS
Alan N. Hirth (0021953)
Debra J. Horn (0037386)
28601 Chagrin Boulevard, Suite 500
Cleveland, Ohio 44122
(216) 831-0042

Attorneys for Defendants John A. Malm, Jr.
and J. Artist Management, Inc.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

*/s/ Alan N. Hirth*
Alan N. Hirth (0021953)

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2004, the foregoing *Answer and Counterclaim* was filed via the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Service was also made via regular U.S. mail on the following:

KATTEN, MUCHIN, ZAVIS, ROSENMAN
575 Madison Avenue
New York, New York 10022
Attorneys for Plaintiff
Attn: Steven Shiffman, Esq.

KATTEN, MUCHIN, ZAVIS, ROSENMAN
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Attorneys for Plaintiff
Attn: Zia Modabber, Esq.

Michael F. Lynch (8282)
MARTIN, CLEARWATER & BELL, LLP
Attorneys for Defendants
Richard Szekelyi, an individual and
Navigent Group
220 East 42nd Street
New York, New York 10017

By: */s/ Thomas M. Lopez*
Thomas M. Lopez (2699)