UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL TRENT REZNOR, an individual,

Plaintiff,

-against-

J. ARTIST MANAGEMENT, INC., an Ohio Corporation, JOHN A. Malm, JR., an individual, RICHARD SZEKELYI, an individual, and NAVIGENT GROUP,

Defendants.

Case No. 04 Civ. 3808 (JSR)

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW CONCERNING CPLR § 202 AND CHOICE OF LAW**

Zia F. Modabber (ZM-6589) (admitted *pro hac vice*)
Daniel A. Platt (DP-0670) (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, California 90067
(310) 788-4400

Steven Shiffman (SS-3630)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
(212) 940-8800

*Attorneys for Plaintiff Michael Trent Reznor*

# TABLE OF CONTENTS

Table of Authorities ..... ii

Plaintiff's Breach of Fiduciary Duty Claims Did Not Accrue in Ohio ..... 1

The 1989 Management Agreement ..... 2

The 1994 Extension of the 1989 Management Agreement ..... 2

The Trademarks ..... 3

Merchandising ..... 3

Louisiana Has 10-Year Statute of Limitations for Breach of Fiduciary Duty Claims to Which a Discovery Rule is Applied ..... 4

Plaintiff's Conversion Claims Seek the Return of Readily Identifiable Funds ..... 4

CONCLUSION ..... 5

# TABLE OF AUTHORITIES

## Cases

Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La. 1979) ....................4

Global Financial Corp. v. Triarc Corp., 693 N.Y.S.2d 479 (Ct. App. 1999)....................1, 2

Komanoff v. Mabon Nugent & Co., 884 F. Supp. 848 (S.D.N.Y. 1995) ....................4

Leach v. Alonso, 663 So.2d 344, 348-49 (La. Ct. App. 1995) ....................4

Martin v. Julius Dierck Equipment Co., 43 N.Y.2d 583, 403 N.Y.S.2d 185 (1978)....................1

Menke v. Glass, 898 F. Supp. 227 (S.D.N.Y. 1995)....................4

Mirman v. Berk & Michaels, P.C., No. 91 CIV. 8606 (JFK), 1994 WL 41088 (S.D.N.Y. Aug. 3, 1994)....................1, 2

Simmons v. Templeton, 723 So.2d 1009, 1013 (La. Ct. App. 1999) ....................4

## Statutes and Rules

CPLR § 202.................................................... *passim*

Plaintiff Michael Trent Reznor ("Reznor") respectfully submits this memorandum of law pursuant to the Court's direction at the end of the first day of trial giving the parties the opportunity to further address where the particular breaches of fiduciary duty alleged by plaintiff accrued for purposes of CPLR § 202, and, if any such breaches accrued in Louisiana, whether Louisiana has a discovery rule applicable to the statute of limitations for claims of breach of fiduciary duty. In addition, the Court requested that the parties address the issue of whether the funds that are the subject of Plaintiff's conversion claims involve a specific or identifiable group of money or funds.

**Plaintiff's Breach of Fiduciary Duty Claims Did Not Accrue in Ohio**

The rule on where a tort claim, such as one for breach of fiduciary duty, accrues for purposes of CPLR § 202 is clear: a "cause of action accrues at the time and in the place of the injury." Global Financial Corp. v. Triarc Corp., 693 N.Y.S.2d 479, 481 (Ct. App. 1999); see also Mirman v. Berk & Michaels, P.C., No. 91 CIV. 8606 (JFK), 1994 WL 41088, *12 (S.D.N.Y. Aug. 3, 1994) (an action for breach of fiduciary duty generally accrues at the time the plaintiff suffers the alleged injury") (citing Martin v. Julius Dierck Equipment Co., 43 N.Y.2d 583, 591, 403 N.Y.S.2d 185, 189 (1978)). Particularly when an injury is economic, as is the case here, "the place of the injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id. (citing cases). In Global Financial, the Court pointed out that "CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants," a "goal better served by a rule requiring the single determination of a plaintiff's residence." Global Financial, 693 N.Y.S.2d at 481. Id.

As set forth in more detail below, Reznor alleges JAM breached its fiduciary duty on an ongoing basis through and including 2003. Reznor moved out of Ohio in 1990, and, as he

testified during the first day of trial, since that time has lived in either Louisiana or California. Mr. Reznor's claims thus accrued in Louisiana or California, which both apply the discovery rule.

**The 1989 Management Agreement**

The time and place that Reznor's claims of breach of fiduciary duty with respect to the 1989 Management Agreement accrued vary depending on the specific injury that results from the unfair terms in the agreement. However, all Reznor's damages from the breaches of fiduciary duty with respect to that agreement were incurred after he moved out of Ohio in 1990 and, thus, all these claims accrued outside of Ohio. See Global Financial, 693 N.Y.S.2d at 481 (claim accrues at ***time and place of injury***); Mirman, 1994 WL 41088, *12. In this regard, the excess commissions that JAM took under the 1989 Management Agreement were taken by JAM in connection with the Fragility Tour that took place in 1999 and 2000.[1] Similarly, by the very nature of the claims, Reznor was not injured by the agreement's provision commissioning compensation in perpetuity or its lack of a sunset clause until after the agreement was terminated. Reznor did not terminate JAM until 2003 and thus was not damaged by these provisions until December 2003, at the earliest, well after he moved out of Ohio.

**The 1994 Extension of the 1989 Management Agreement**

The damages incurred by Reznor with respect to the breach of fiduciary claims arising out of the extension of the 1989 Management Agreement in 1994 all accrued after the time Reznor left Ohio and thus are not subject to the shorter limitations period in the Ohio statute. The damages Reznor incurred with respect to the extension of the 1989 Management Agreement are the same as those set forth above with respect to the 1989 Management Agreement.

---

[1] Reznor does not seek any damages relating to excess commissions that were taken prior to 1998.

**The Trademarks**

It is undisputed that the trademark applications that Reznor challenges were not made until 1993 and later. (See Pl.'s Trial Exs. 20-21). As noted above, Reznor no longer lived in Ohio at this time and thus his claims for breach of fiduciary duty did not accrue in Ohio. It is also worth noting that JAM's assertion that the relevant events relating to these trademarks occurred in Ohio is simply wrong. The trademark applications were filed in Washington, D.C., not Ohio. (See id.). While they were prepared in Ohio, there is no evidence that Reznor signed them there. Indeed, the evidence indicates that this was not the case. During the second day of trial, Reznor testified that he lived in Los Angeles when the 1993 trademark applications were signed. (5/17/05 Rough Tr. at 81:23 – 82:5). Although Reznor could not recall how the applications were presented to him, from Mr. Hirth's questioning, it appears that the applications were mailed to him there for his signature. (Id.). In addition, during his deposition, Mr. Malm admitted that the 1998 trademark application for the lowercase "nin" trademark was sent to Reznor in New Orleans for him to sign.

**Merchandising**

Reznor's breach of fiduciary claims with respect to the royalties for merchandizing similarly accrued after Reznor moved out of Ohio. Malm admits in his choice of law brief that J. Artist Management Merchandise, Inc., the jointly-held merchandizing company, was not formed until after 1993. (Defs. Br. at 9). Moreover, Reznor's damages for royalties from merchandizing cover the period from 1994 through 2003 and thus were all incurred after he moved out of Ohio. (Malm Tr. 595-97, attached hereto as Exhibit A).

**Louisiana Has a 10-Year Statute of Limitations for**
**Breach of Fiduciary Duty Claims to Which a Discovery Rule is Applied**

Under Louisiana law, claims for breach of fiduciary duty are subject to a 10-year statute of limitations. Simmons v. Templeton, 723 So.2d 1009, 1013 (La. Ct. App. 1999). Moreover, as do California and New York, (Pl. Mem. at 9), Louisiana applies a discovery rule to claims for breach of fiduciary duty. See Leach v. Alonso, 663 So.2d 344, 348-49 (La. Ct. App. 1995) (noting that the Louisiana Supreme Court has set out 4 situations where the statute of limitations will not run, including "[w]here the cause of action was not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant") (citing Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La. 1979)); Simmons, 723 So.2d at 1012. The discovery rule applies as long as the plaintiff's ignorance "was not willful, negligent or unreasonable." Simmons, 723 So.2d at 1012. This is essentially the same standard as is applied in New York. See generally Menke v. Glass, 898 F. Supp. 227, 232 (S.D.N.Y. 1995); Komanoff v. Mabon Nugent & Co., 884 F. Supp. 848, 853-55 (S.D.N.Y. 1995).

**Plaintiff's Conversion Claims Seek the Return of Readily Identifiable Funds**

On pages 5-6 of plaintiff's Choice of Law Memorandum, plaintiff sets forth the law in Ohio that provides that a claim for conversion may be asserted when the funds converted are identifiable. The funds that plaintiff seeks the return of are specific funds that are easily identifiable. Mr. Malm, either directly, or through his agent Mr. Szekelyi, directed the transfer of funds out of Reznor's accounts over which he had control and into the accounts of the jointly-held entities. There are wire transfer documents that correspond to the transfers that identify the date of the transfer, the specific amounts that were transferred out of Reznor's accounts, and

identify the accounts to which those funds were transferred. These forms are on plaintiff's exhibit list and will be presented to the jury. (See, e.g., Pl.'s Trial Exs. 182, 190).[2]

## CONCLUSION

For the reasons set forth above, plaintiff respectfully submits that his breach of fiduciary duty claims accrued, for purposes of CPLR § 202, while Reznor was a resident of either California or Louisiana, both of which have a discovery rule for claims of breach of fiduciary duty. Accordingly, the shorter statute of limitations period that would be applied if the claims accrued in Ohio should not be applied. Plaintiff further respectfully submits that the funds converted are specific and identifiable.

Dated: May 17, 2005

KATTEN MUCHIN ROSENMAN LLP

By: ______________________________
Steven Shiffman (SS-3630)
575 Madison Avenue
New York, New York 10022
(212) 940-8800

and

Zia F. Modabber (ZM-6589) (*Pro Hac Vice)*
Daniel A. Platt (DP-0670) (*Pro Hac Vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4400

*Attorneys for Plaintiff Michael Trent Reznor*

[2] It is important to note that the claims for conversion arising out of the improper loans are not the only claims for conversion asserted by Reznor. Defendants do not address these other claims, which include claims for conversion of Reznor's records and other property such as the trademarks. These claims are cognizable under the law of Ohio and New York.

# EXHIBIT A

# CONDENSED TRANSCRIPT

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL TRENT REZNOR,
AN INDIVIDUAL,
Plaintiff,

vs. Case No. 04 CV 3808(JSR)(DCF)

J. ARTIST MANAGEMENT,
et al.,
Defendants.

- - - - -

**VIDEOTAPED DEPOSITION OF**

**JOHN A. MALM**

Volume II

Taken On Thursday, September 23, 2004, at 9:05 a.m.

At The Offices Of:

Bricker & Eckler

1500 One Cleveland Center

Cleveland, Ohio

Before Michelle M. Lewis, a Registered Professional Reporter and Notary Public in and for the State of Ohio

Cefaratti Group
THE LITIGATION SUPPORT COMPANY
1.800.694.4787 www.cefgroup.com fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 150, Akron, Ohio 44308 • 330.253.8119
Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

is the application and registration package. It looks like the lower case NIN logo. And it bears Bates numbers TR 955 through 987.

- - - - -

(Thereupon, Deposition Exhibit-24 was marked for purposes of identification.)

- - - - -

Q. Do you remember, Mr. Malm, applying to register the lower case NIN logo sometime in 1998 in the name of J. Artist Management, Inc. and Trent Reznor?
A. Yes.
Q. All right. Take a look at the page Bates number TR 962. Is that your signature on that page?
A. Yes, it is.
Q. Did you sign it on or about March 6, 1998 to the best of your memory?
A. Yes.
Q. To the left do you recognize the signature?



A. Yes.
Q. Whose signature is that?
A. Trent's.
Q. To your knowledge did he sign it on or about March 9, 1998?
A. I would imagine since it says that.
Q. Okay. Did you review this document before you signed it?
A. Yes.
Q. To your -- was anybody pres -- did you present this document to Mr. Reznor for him to sign?
A. No.
Q. Sorry?
A. No. I believe this was sent to Ms. McPherson. We sent all important documents to her so they wouldn't just be floating around the studio.
MR. MODABBER: Move to strike the last part of your answer as non-responsive.
A. What does that mean?
Q. You did not give this to Mr. Reznor to sign; is that correct?



A. I don't believe so. I believe it was sent to Ms. McPherson.
Q. Okay. Did you send it to her?
A. Yes.
Q. If you sent this to her, would you have a copy of any transmittal letter in your file, to your knowledge?
A. I'd have a copy.
Q. Did you maintain files of things that you sent to Ms. McPherson?
A. Yes.
Q. Have you destroyed any of those documents?
A. No. You've got them all.
MR. MODABBER: Move to strike as non-responsive.
THE WITNESS: What's that mean?
MR. HIRTH: It means when you volunteer information.
THE WITNESS: That he doesn't want to hear?
MR. HIRTH: No. You're asking me, I'm just telling you. It means when you volunteer information that he



believes is non-responsive to the question he makes a record of it.
THE WITNESS: Okay.
MR. HIRTH: All he's doing is making a record. He's not -- he's protecting his record.
THE WITNESS: Okay.
MR. HIRTH: That's all he's doing. It's nothing more than that. It's that law school stuff.
Before I explained that comment to my client, was there a question pending that I interrupted?
MR. MODABBER: No.
MR. HIRTH: Because I didn't think there was. Okay.
MR. MODABBER: No, he answered.
MR. HIRTH: I'm pleased to hear it.
Q. Now, a moment ago you offered that you sent all important documents to Ms. McPherson so they wouldn't be lying around, or something to that effect; is that correct?
A. So they wouldn't be lying